<u>**NOT FOR PUBLICATION**</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                                    Chapter 11

RED BULL TAXI INC.
                                                                          Case No. 16-13153 (MKV)
                                        Debtor.

-------------------------------------------------------------x

DECISION ON MOTION OF CAPITAL ONE EQUIPMENT FINANCE CORP.
TO DISMISS DEBTOR'S CHAPTER 11 CASE OR TO GRANT RELIEF FROM THE
AUTOMATIC STAY AND EITHER APPOINT A CHAPTER 11 TRUSTEE OR CONVERT
<u>DEBTOR'S CASE TO ONE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE</u>

APPEARANCES:

TROUTMAN SANDERS LLP
*Counsel for Capital One Equipment Finance*
*Corp., f/k/a All Points Capital Corp., d/b/a*
*Capital One Taxi Medallion Finance*
875 Third Avenue
New York, New York 10022
By:    Jonathan D. Forstot, Esq.
         David A. Pisciotta, Esq.

PORZIO, BROMBERG & NEWMAN, P.C.
*Counsel for the Debtor*
156 West 56th Street, Suite 803
New York, New York 10019-3800
By:    Brett S. Moore, Esq.

**MARY KAY VYSKOCIL**
**UNITED STATES BANKRUPTCY JUDGE**

Secured creditor, Capital One Equipment Finance Corp., *f/k/a* All Points Capital Corp.,

*d/b/a* Capital One Taxi Medallion Finance ("<u>Capital One</u>") moves to dismiss the Debtor's

chapter 11 case or to grant relief from the automatic stay and either to appoint a chapter 11

trustee or convert the Debtor's case to one under chapter 7 of the Bankruptcy Code (the

"Motion") [ECF No. 9].[1]  The Debtor objects to Capital One's Motion (the "Objection" or

"Obj.") [ECF No. 37].[2]  On April 20, 2017, the Court conducted a hearing on the Motion (the

"Hearing").

### *BACKGROUND*

The Debtor, Red Bull Taxi, Inc., has three primary assets:  three taxicab medallions

(collectively, the "Medallions") issued by the New York City Taxi and Limousine Commission

(the "TLC").  *See* First Day Affidavit of Evgeny Friedman Pursuant to Rule 1007-2 of the Local

Bankruptcy Rules for the Southern District of New York [ECF No. 2] (the "Friedman Affidavit"

or the "Friedman Aff.") ¶¶ 7, 9.

Pursuant to a loan agreement dated November 22, 2011 (the "Loan Agreement"), the

Debtor borrowed the principal amount of $1,950,000 from Capital One.  (Friedman Aff. ¶ 30.)

The loan was secured by, *inter alia*, all license and property rights in the Medallions and the

proceeds thereof.  (Friedman Aff. ¶ 30; Robinson Decl., Exh. C, Security Agreement, § 2.)   On

August 15, 2014, the Debtor, certain of its affiliates and Capital One entered into a forbearance

agreement (the "Forbearance Agreement"), pursuant to which the Debtor executed an affidavit

for judgment by confession, whereby it confessed judgment in the amount of $1,891,985.50.

(Friedman Aff. ¶ 32.)   In the event that the Debtor failed to comply with the terms of the

Forbearance Agreement, Capital One was entitled to seek entry of the confession of judgment

against Debtor.  (Friedman Aff. ¶ 32.)

---

[1] In support of its Motion, Capital One filed a declaration of David A. Pisciotta, dated December 5, 2016 (the "Pisciotta Decl.") [ECF No. 11] and a declaration of Michael P. Robinson, dated December 5, 2016 (the "Robinson Decl.") [ECF No. 12].

[2] In response to the Objection, Capital One filed a Reply Memorandum Of Law in further support of its Motion To Dismiss Debtor's Chapter 11 Case or to Grant Relief from the Automatic Stay and Either Appoint a Chapter 11 Trustee or Convert Debtor's Case to One under Chapter 7 Of the Bankruptcy Code (the "Reply Brf.") [ECF No. 42].

On October 23, 2015, after the Debtor failed to comply with the terms of the Forbearance Agreement, the County Clerk of New York County entered a judgment against the Debtor in the amount of $1,869,622.27 (the "Judgment"). (Friedman Aff. ¶ 34.) By letter dated October 21, 2016, Capital One informed the Debtor of its intention to hold a public auction on November 14, 2016 at 10:30 a.m. in order to sell the Debtor's Medallions. (Friedman Aff. ¶ 36.) On November 14, 2016 (the "Petition Date"), before the auction took place, the Debtor commenced this chapter 11 case.

As of the Petition Date, the Medallions were in the physical custody and possession of the TLC, pursuant to a levy by and partial surrender to Capital One. (Friedman Aff. ¶ 8.) At some point post-petition, the Debtor obtained the Medallions from the TLC and, on an unspecified date, entered into a lease arrangement with Tunnel Taxi Management, LLC ("Tunnel Management"), pursuant to which the Debtor leases the Medallions to Tunnel Management for a total monthly fee of $4,500; *i.e.* $1,500 per Medallion. (Friedman Aff. ¶ 9.) The monthly $4,500 payment under the purported lease agreement is the sole source of the Debtor's revenue. The Debtor has not provided the Court with a copy of this lease agreement and, at the Hearing, counsel to Capital One stated that he has requested from the Debtor, but not received, a copy of the lease agreement. The Debtor's counsel stated at the Hearing that he did not have a copy of the lease agreement.

Under the lease arrangement, Tunnel Management uses the Debtor's Medallions to sublease taxi vehicles to licensed taxis drivers and receives the gross revenues from the operation of the taxis. Tunnel Management is responsible for paying, from the gross revenues, all expenses associated with the utilization of the Medallions and the operation of the taxi vehicles (*e.g.* insurance coverage, vehicle maintenance and repairs). (Friedman Aff. ¶ 9.)

*DISCUSSION*

**I.**      *Dismissal or Conversion for Cause*

Capital One argues that cause to dismiss or convert the Debtor's chapter 11 case under section 1112(b) exists for three reasons:  (1) there is a substantial or continuing loss to the estate and there is no reasonable likelihood of rehabilitation; (2) the Debtor filed its case in bad faith and (3) the case was filed for the improper purpose of benefitting non-debtor parties.

Section 1112(b) of the Code directs that, on the request of a party in interest, and after notice and a hearing, the court shall, subject to exceptions set forth in sections 1112(b)(2) and 1112(c), convert a chapter 11 case to a chapter 7 case, or dismiss a case, whichever is in the best interests of creditors and the estate, for cause, unless the court determines that the appointment under section 1104(a) of a trustee or examiner is in the best interests of creditors and the estate. 11 U.S.C. § 1112(b).  The moving party bears the burden to establish "cause" under section 1112(b) by a preponderance of the evidence.  *See Faflich Assocs. v. Court Living Corp. (In re Court Living Corp.)*, No. 96 CIV 965, 1996 WL 527333, at *2 (S.D.N.Y. Sept. 16, 1996); *In re Adbrite Corp.*, 290 B.R. 209, 214, 218 (Bankr. S.D.N.Y. 2003); *In re Pulp Finish 1 Co.*, No. 12–13774, 2013 WL 5487933, at *2 (Bankr. S.D.N.Y. Oct. 2, 2013).  Bankruptcy courts have broad discretion in determining whether cause exists for conversion or dismissal under section 1112(b). *See Taylor v. U.S. Trustee (In re Taylor)*, No. 97 CIV. 5967, 1997 WL 642559, at *3 (S.D.N.Y. Oct. 16, 1997); *In re 1031 Tax Group*, *LLC, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007)*; *In re Adbrite Corp.*, 290 B.R. at 215.

A.    Cause Exists Under § 1112(b)(4)(A)

Section 1112(b)(4) contains a non-exhaustive list of examples of what constitutes cause for dismissal or conversion.  Pursuant to section 1112(b)(4)(A), cause includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."  11 U.S.C. § 1104(b)(4)(A).   Thus, to establish cause under section 1112(b)(4)(A), the moving party must establish two separate prongs: (1) that the estate is suffering a substantial or continuing loss or diminution and (2) the absence of a reasonable likelihood of rehabilitation.  Section 1112(b)(4)(A) is "intended to preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation."  *In re Lizeric Realty Corp.*, 188 B.R. 499, 502 (Bankr. S.D.N.Y. 1995); *see also In re Court Living Corp.*, No. 96 CIV. 965, 1996 WL 527333, at *3 (S.D.N.Y. Sept. 16, 1996).  For purposes of this analysis, the term "rehabilitation" is not synonymous with the term "reorganization," which, for purposes of chapter 11 generally, may include a liquidation.  *See In re Adbrite Corp.*, 290 B.R. at 216.   Rather, the term "rehabilitate" means" to put back in good condition; re-establish on a firm, sound basis."  *In re Lizeric Realty Corp.*, 188 B.R. at 503 (quoting 5 *Collier on Bankruptcy* ¶ 1112.03 at 1112-19 (Lawrence P. King *et al.* eds., 15th ed. 1995)) (internal quotation marks omitted).  Courts have found that cause exists under section 1112(b)(4)(A) when a debtor has a negative cash flow post-petition, and an inability to pay current expenses.  *See In re Adbrite Corp.*, 290 B.R. at 215.  This is the case with respect to the Debtor.

Although the case is just over five months old, based on the evidence submitted in support of the Motion and counsel's admissions at the Hearing, the Court finds that Capital One has established "cause" pursuant to section 1112(b)(4)(A).  Since the Petition Date, there has

been a substantial and continuing loss to, and diminution of the estate. At the time the Debtor filed its petition, the Medallions were being held by the TLC, and therefore the Debtor was not operating or generating any revenue. The Debtor's current revenue is insufficient to meet the Debtor's post-petition expenses, which continue to accrue. As of March 30, 2017, the Debtor's cash on deposit totaled $9,555.95, and as of February 28, 2017, "the Debtor has accrued unpaid administrative expenses in the amount of $174,421.58, and there are $0 in unencumbered funds in the Estate." (First interim fee application of Debtor's counsel, dated March 30, 2017 [ECF No. 34] ¶ 12.)

The Debtor has conceded that it has no equity in the Medallions, its primary assets and sole source of revenue,[3] and that it has no unencumbered assets. While administrative expenses (in the form of professional fees and quarterly fees payable to the U.S. Trustee) will continue to increase, the Debtor has acknowledged that it does not expect an increase in revenue beyond the $4,500 per month it receives from Tunnel Management for the lease of the Debtor's three Medallions. As such, there are no prospects for the Debtor to generate sufficient cash to fund its ongoing expenses, much less to fund this case through the proposal and confirmation of a plan. In addition, Capital One correctly points out that, in order to meet the requirements of section 1129(b)(2)(A)(i)(II) of the Bankruptcy Code, any plan that proposes to pay Capital One's secured claim (up to the value of the Medallions, which, as discussed below, the Debtor asserts is $1.5 million) in deferred cash payments must provide that the present value of those payments

---

[3] After the Hearing, on April 24, 2017, Capital One filed a letter stating that Tunnel Management, the lessee of the Debtor's Medallions and the sole source of revenue to the Debtor, had lost its license to continue managing the Medallions. [ECF No. 43] Capital One attached to its letter a copy of a letter, dated April 4, 2017, from the TLC to Tunnel Management (the "TLC Letter"). In the TLC Letter, the TLC informed Tunnel Management that its license renewal application was denied for five specific reasons and that the medallion owners associated with Tunnel Management's license have been notified of the closure of Tunnel Management's License. Although the Court's decision is not based, in any part, on the TLC Letter, it would appear from the TLC Letter that Tunnel Management, as of the date of the Hearing and this decision, is not licensed to manage the Debtor's Medallions, and thereby is not authorized to continue the arrangement with the Debtor that serves as the Debtor's sole source of revenue.

equals the allowed amount of Capital One's secured claim. (Reply Brf. p. 4) Assuming that the Debtor devoted its entire revenue stream solely to paying Capital One's claim, it would take nearly 28 years just to pay the face amount of Capital One's claim. (Reply Brf. pp. 4, 5) This payment schedule would not include the payment of any other claims (administrative, priority or general unsecured) against the Debtor. At the Hearing, the Debtor conceded that this analysis is factually accurate. The Debtor has no other unencumbered funds and it is highly probable that the Debtor would be unable to fund payments under a plan. Thus, by remaining in chapter 11, the already administratively insolvent Debtor will continue to incur additional administrative expenses that it will be unable to meet. This circumstance has been held to justify conversion under section 112(b)(4). *See, e.g.*, *In re BH S & B Hldgs, LLC*, 439 B.R. 342, 349 (Bankr. S.D.N.Y. 2000). Accordingly, the Court finds that Capital One has met its burden of showing that there is no reasonable likelihood that the Debtor will be re-established on a sound financial basis. The Court therefore finds that cause exists under section 1112(b)(4)(A) to convert or dismiss the Debtor's case.

B.     Additional Cause Exists Under § 1112(b)

It is well settled that the examples of what constitutes "cause" for conversion or dismissal set forth in section 1112(b)(4) are illustrative, and not exhaustive. *See C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311 (2d Cir. 1997) ("It is important to note that this list is illustrative, not exhaustive."); *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 334 (Bankr. S.D.N.Y 2001). The filing of a bankruptcy petition in bad faith also constitutes "cause" for dismissal or conversion of a case under section 1112(b). *See, e.g.*, *In re C-TC 9th Ave. P'ship*, 113 F.3d at 1312; *In re Reyes*, No. 14-13233, 2015 WL 4624156, at *4 (Bankr. S.D.N.Y. Aug. 4, 2015); *In re Schur Mgmt. Co.*, 323 B.R. 123, 126 (Bankr. S.D.N.Y 2005).

Neither malice nor actual fraud is required to find a lack of good faith. *See In re Syndicom Corp.*, 268 B.R. 26, 49 (Bankr. S.D.N.Y. 2001).

The Second Circuit has identified eight factors that support a finding that a chapter 11 case was commenced in bad faith:

(1) the debtor has only one asset;

(2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

(3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

(5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6) the debtor has little or no cash flow;

(7) the debtor cannot meet current expenses including the payment of personal property and real estate taxes; and

(8) the debtor has no employees.

*See In re C-TC 9th Ave. P'ship*, 113 F.3d at 1311. These factors, commonly referred to as the "*C-TC* factors," should not be considered in isolation and no one factor is determinative. *See In re General Growth Props., Inc.*, 409 B.R. 43, 56 (Bankr. S.D.N.Y. 2009). Courts may consider any or all of the *C-TC* factors, *see In re Hampton Hotel Investors, L.P.*, 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001), and must also consider the totality of the circumstances in each particular case. *See In re C-TC 9th Ave. P'ship*, 113 F.3d at 1312 (noting that "a determination of bad faith requires a full examination of all the circumstances of the case")*; In re Liberate Techs.*, 34 B.R. 206, 211 (Bankr. N.D. Cal 2004) ("Whether a petition is filed in good faith is to be determined upon consideration of all the facts and circumstances of the case.").

In this case, applying the *C-TC* factors, the Court finds that there is additional cause for

dismissal or conversion of the Debtor's case:

- The Debtor's chief assets, the Medallions, are the subject of a foreclosure by Capital One, as a result of the Debtor's default under the Forbearance Agreement, which resulted in the Judgment;

- The Debtor has few unsecured creditors whose claims - - excluding two claims based on pre-petition loans to the Debtor (together, the "Lender Claims") by entities that each are solely owned by Friedman, the principal and sole shareholder of the Debtor, (Friedman Aff. ¶ 1) and claims that are subject to pending litigation - - total less than $50,000 (and including the Lender Claims, total less than $200,000) and are small in relation to Capital One's claim which, as discussed below, the Debtor has listed in its Schedules in an amount exceeding $2 million;

- The Debtor's financial condition is, in essence, a two party dispute between the Debtor and Capital One, its secured creditor, which can be resolved in a pending state court action;[4]

- The timing of the Debtor's filing - - on the morning of the scheduled foreclosure - - while not, in itself, a basis for a finding that the Debtor's case was filed in bad faith, evidences an intent to delay or frustrate the efforts of Capital One to enforce its rights with respect to the Medallions;

- The Debtor is administratively insolvent, has no unencumbered assets and has no expectation of an increase in revenue;

- The Debtor has not filed monthly operating reports since the report filed on February 16, 2017 for the period of January 1, 2017 through January 31, 2017 [ECF No. 31] and this failure, "whether based on inability to do so or otherwise, undermines the Chapter 11 process and constitutes cause for dismissal or conversion of the Chapter 11 proceedings." *In re Tornheim*, 181 B.R. 161, 164 (Bankr. S.D.N.Y. 1995) (quoting *In re Roma Group, Inc.*, 165 B.R. 779, 780 (S.D.N.Y. 1994)); and

- The Debtor has no employees.  Mr. Friedman is the president, sole director and sole shareholder of the Debtor.  (Friedman Aff. ¶ 1)  The Debtor does not have any other officers or employees. (Obj. ¶ 9)

Capital One also argues that an additional basis for cause to convert or dismiss the

Debtor's case should be found based on the fact that the Debtor commenced this case for the

---

[4] On August 14, 2015, the Debtor, Mr. Freidman, and numerous other entities (collectively, the "Plaintiffs") commenced an action against Capital One by filing a summons and complaint (the "Complaint") in the Supreme Court of New York, New York County (the "State Court") seeking, among other things, to declare the Judgment vacated. (Robinson Decl. ¶ 26., Ex. P.)  On June 8, 2016, the State Court dismissed the Complaint in its entirety. (Robinson Decl. ¶ 27, Ex. Q.)  On July 8, 2016, the Plaintiffs filed a notice of appeal of the dismissal of the Complaint, but, according to Capital One, have yet to perfect the appeal.  (Robinson Decl. ¶ 28, Ex. R.)

improper purpose of benefitting a non-debtor party.  The Court finds that Capital One has failed

to meet its burden with respect to this argument.  There is no evidence that Mr. Friedman

commenced the Debtor's case for the purpose of protecting his investment in Tunnel

Management.

> C.    Conversion of the Debtor's Case
>        is in the Best Interests of Creditors and the Estate

Having found cause to convert or dismiss the Debtor's case, the Court further concludes

that conversion, rather than dismissal, is in the best interest of the creditors and the estate.  In the

Debtors Schedule A/B: Assets – Real and Personal Property [ECF No. 17] ("Schedule A/B"), the

Debtor lists an account receivable in the amount of $1,045,509.  At the Hearing, in response to

the Court's question about this receivable, the Debtor's counsel explained that the receivable is

owing to the Debtor by its president and sole shareholder, Mr. Friedman.  Moreover, a copy of

the Debtor's lease agreement with Tunnel Management, an entity in which Mr. Friedman holds a

one-third ownership interest (Pisciotta Decl. ¶ 15, Exh. U), has yet to be provided to the Court.

In addition, the holders of the Lender Claims, the two largest unsecured claims, with the possible

exception of Capital One (depending upon the extent, if any, of Capital One's deficiency claim),

are solely owned by Mr. Friedman.  A chapter 7 trustee would be best positioned to recover the

receivable listed on Schedule A/B upon conversion and to investigate the Lender Claims and the

rights and obligations of the Debtor and Tunnel Management under the purported lease

agreement between the parties, and thereby maximize the estate's value for the benefit of all

creditors.  In light of these facts, the Court also finds that equality of distribution would be best

ensured by conversion, as opposed to dismissal.[5]

---

[5] Capital One seeks, in the alternative to dismissal or conversion, the appointment of a chapter 11 trustee pursuant to section 1104 of the Bankruptcy Code.  Because the Court finds cause to convert the Debtor's chapter 11 case to a

## II.        *Relief from the Automatic Stay*

Capital One also seeks relief from the automatic stay pursuant to sections 362(d)(1) and

(d)(2).  Section 362(d) provides as follows:

> On request of a party in interest and after notice and a hearing, the court
> shall grant relief from the stay provided under subsection (a) of this
> section, such as by terminating, annulling, modifying, or conditioning
> such stay –
>
>> (1)  for cause, including the lack of adequate protection of an
>>      interest in property of such party in interest; or
>>
>> (2)  with respect to a stay of an act against property under
>>      subsection (a) of this section, if -
>>
>>> (A) the debtor does not have an equity in such property; and
>>>
>>> (B) such property is not necessary to an effective
>>>     reorganization.

11 U.S.C. § 362(d).  Capital One, as the party seeking relief from the automatic stay pursuant to

section 362(d), has the burden of proof on the issue of the Debtor's equity in the Medallions, and

the Debtor, as the party opposing such relief, has the burden of proof on all other issues.  *See* 11

U.S.C. § 362(g).  For the reasons discussed below, the Court finds that the Debtor lacks equity in

the Medallions and that the Medallions are not necessary for an effective reorganization, and

therefore concludes that stay relief is warranted under section 362(d)(2).  As such, the Court

need not address Capital One's lack of adequate protection argument under section 362(d)(1).

Capital One has shown, and the Debtor has conceded, both in its Schedules and at the

Hearing, that the Debtor lacks equity in the Medallions.  According to the Debtor, the total value

of all three Medallions is $1.5 million.  *See* Schedule A/B, line 62.  The Debtor has listed Capital

---

case under chapter 7, and that conversion of the Debtor's case to a case under chapter 7 is in the best interests of the
estate and creditors, the Court need not reach the request to appoint a chapter 11 trustee.

One's claim on its Schedule D:  Creditors Who Have Claims Secured by Property [ECF No. 17] ("Schedule D") in the amount of $2,048,491.27 (the "Capital One Claim Amount").  The Capital One Claim Amount consists of the Judgment, in the amount of $1,869,622.27, plus interest accrued prior to the Petition Date at the statutory rate.  (Robinson Decl. ¶¶ 33-36)  In its Schedule D, the Debtor identified the value of collateral supporting the Capital One Claim Amount, *i.e.* the Medallions, as $1.5 million.

Since Capital One has met its burden of proving, and the Debtor concedes, that the Debtor has no equity in the Medallions, the Court turns to whether the Debtor has met its burden of proving that the Medallions are necessary for an effective reorganization.  To satisfy its burden, it is not enough for the Debtor to show that if there is conceivably to be an effective reorganization, the Medallions would be necessary for such reorganization.  *See In re 160 Bleecker St. Assocs.*, 156 B.R. 405 (S.D.N.Y. 1993) (quoting *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376 (1988)).  Rather, the Debtor must prove that the Medallions are essential for "an effective reorganization *that is in prospect*" and that "there is a reasonable possibility of a successful reorganization within a reasonable time."  *Id.*  (emphasis in original).   The Debtor has not met its burden.

The Debtor argues that its reorganization will be based on deferred cash payments to Capital One that will be paid, at least in part, from the monthly revenue the Debtor receives under its lease arrangement with Tunnel Management.  (Obj. ¶ 43)  However, as discussed above, the Debtor is administratively insolvent and concedes that it has no prospect for an increase in revenue.  In addition, as discussed above, if the Debtor were to make the proposed deferred cash payments to Capital One, in order to meet the requirements of Bankruptcy Code section 1129(b)(2)(A)(i)(II), it would take nearly 28 years just to pay the face amount of Capital

One's claim.  The Debtor does not contest this point.  Rather, the Debtor has stated that its prospect for a successful rehabilitation is based on a potential capital contribution from Mr. Friedman.  Notwithstanding that Capital One's Motion was filed nearly five months ago, there is no evidence that Mr. Friedman has any intention of making a capital contribution or loan to the Debtor and the Debtor conceded at the Hearing that there are no concrete proposals to fund a deferred payment plan.  The Court finds further unlikely the potential of a capital contribution by Mr. Friedman, in an amount sufficient to serve as a basis for demonstrating an effective reorganization "that is in prospect" given that the Debtor has no unencumbered assets to serve as collateral for a loan, and the fact that the Debtor's largest receivable, of over $1 million, is owing to the Debtor, according to the Debtor's Schedule A/B, by Mr. Friedman.

Since Capital One has proven that the Debtor lacks equity in its collateral – the Medallions - and since the Medallions are not necessary to an effective reorganization, relief from the automatic stay under section 362(d)(2) is warranted.

### CONCLUSION

For the reasons stated herein, the Debtor's chapter 11 case will be converted to a case under chapter 7 of the Bankruptcy Code and, pursuant to Rule 2002(f) of the Federal Rules of Bankruptcy Procedure, the clerk shall notify creditors of the conversion.  In addition, Capital One is granted relief from the stay under section 362(d)(2) for the purpose of foreclosing on the Medallions in accordance with the Loan Agreement and the Forbearance Agreement, subject to the requirement that Capital One account for, and turn over to the estate, any proceeds of foreclosure that exceed the Capital One Claim Amount.

Counsel for Capital One is directed to prepare an order in accordance with the foregoing, which, if not agreed upon as to form by the Debtor, shall be settled on three business days' notice.

Dated:    New York, New York
          May 3, 2017                   *s/ Mary Kay Vyskocil*
                                     Honorable Mary Kay Vyskocil
                                       United States Bankruptcy Judge